**RECORD NO. 13-2278**

**IN THE**

# United States Court of Appeals
### FOR THE FOURTH CIRCUIT

J. NEIL DEMASTERS,

*Plaintiff - Appellant,*

v.

CARILION CLINIC;
CARILION MEDICAL CENTER;
CARILION BEHAVIORAL HEALTH, INC.,

*Defendants - Appellees,*

---------------------------

NATIONAL EMPLOYMENT LAWYERS ASSOCIATION;
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

*Amici Supporting Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
AT ROANOKE

### RESPONSE BRIEF OF APPELLEES

Agnis C. Chakravorty (VSB # 30225)
Frank K. Friedman (VSB #25079)
Joshua R. Treece (VSB #79149)
WOODS ROGERS PLC
10 South Jefferson Street, Suite 1400
Roanoke, Virginia 24011
(540) 983-7600 Telephone
(540) 983-7711 Facsimile

*Counsel for Appellees*                              March 20, 2014

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __13-2278__         Caption: __J. Neil DeMasters v. Carilion Clinic, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Carilion Clinic__
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                          ☐YES ☑NO
      If yes, identify all parent corporations, including grandparent and great-grandparent
      corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                              ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____    Date: __11/1/13__

Counsel for: Appellees _____

## CERTIFICATE OF SERVICE
***************************

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____              __11/1/13__
(signature)                                          (date)

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-2278__    Caption: J. Neil DeMasters v. Carilion Clinic, et al _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Carilion Medical Center__ _____
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☑YES ☐NO
      If yes, identify all parent corporations, including grandparent and great-grandparent
      corporations:
      Carilion Clinic

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?   ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?   ☐YES ☑NO
     If yes, identify any trustee and the members of any creditors' committee:

Signature: _Frank Fried_____   Date: _11/1/13_____

Counsel for: Appellees_____

## CERTIFICATE OF SERVICE
*****************************

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_Frank Fried_____                   _11/1/13_____
        (signature)                                      (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-2278__    Caption: J. Neil DeMasters v. Carilion Clinic, et al _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

Carilion Behavioral Health, Inc. _____
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                            ☑YES ☐NO
      If yes, identify all parent corporations, including grandparent and great-grandparent
      corporations:
      Carilion Clinic

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                                ☐YES ☑NO
      If yes, identify all such owners:

10/28/2013 SCC                          - 1 -

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _Frank Fried_____    Date: _11/1/13_____

Counsel for: Appellees_____

## CERTIFICATE OF SERVICE
****************************

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_Frank Fried_____                    _11/1/13_____
(signature)                                                    (date)

# TABLE OF CONTENTS

CORPORATE DISCLOSURES

TABLE OF AUTHORITIES ................................................................v

STATEMENT OF THE ISSUES................................................1

STATEMENT OF THE CASE..................................................1

STATEMENT OF THE FACTS ................................................2

SUMMARY OF ARGUMENT ..................................................9

STANDARD OF REVIEW ........................................................12

ARGUMENTS AND AUTHORITIES ....................................13

      I.    The District Court Correctly Held that DeMasters Could
          Not Show that He was Engaged in Protected Activity
          and, Therefore, DeMasters Could Not State a Valid
          Retaliation Claim.................................................................13

          A.    The District Court Correctly Held that DeMasters
                Failed to Allege a Cognizable Claim for
                Retaliation Under the Participation Clause Because
                DeMasters Did Not Allege Participation in a Title
                VII Statutory Process .................................................14

          B.    DeMasters Failed to Allege a Cognizable Claim
                for Retaliation Under the Opposition Clause............................18

              1.    DeMasters' Conversations with Doe are Not
                    Oppositional.................................................21

                2.    DeMasters Alleged Statements to Carilion
                    Do Not Qualify as Protected Oppositional
                    Conduct.................................................22

(a)    Simply Ferrying a Complaint through Proper Channels is Not Oppositional ..................22

(b)    DeMasters' Purported Criticisms of the Post-Firing "Hostile Work Environment" was Not Oppositional Conduct Related to an Unlawful Employment Practice Under Title VII ................24

(1)    The District Court Correctly Found Statements Made After the Alleged Harasser's Firing Were Non-Oppositional and Not Related to Unlawful Discrimination Prohibited Under Title VII...........................................24

(2)    Reviewing Each of the Alleged Comments Made After the Alleged Harasser's Firing Illustrates that these Statements are Not "Protected Activity" ......................29

C.    The District Court Correctly Applied *Thompson* And Rightly Held That DeMasters Does Not Fall Within the Zone of Interest For Third Party Claims Where DeMasters Was Not Terminated to Punish Doe, and He Did Not Undertake Protected Activity ...............33

1.    This is Plainly Not a Zone of Interest Case ...................33

2.    DeMasters' and the *Amicus'* Attempts to Expand *Thompson* are Unfounded ..................35

II.    DeMasters And the *Amici* Seek To Impermissibly Expand Retaliation Claims Beyond The Limits Embraced By The Supreme Court, The Fourth Circuit And The EEOC....................................................................................38

ii

A. DeMasters' and *Amici's* Attempt to Impermissibly Expand Participation Claims is Contrary to Precedent and the Controlling Statutory Language .................40

 1. The District Court Correctly Held (As Have All Circuit Courts That Have Considered The Issue) That Participation in an Internal Investigation Cannot Give Rise to a Participation Claim Under § 704(a) .............................40

  (a) The Statutory Language Does Not Embrace Internal Investigations Prior To The Filing Of An EEOC Charge ...................41

  (b) The Judicially Crafted Standard for Vicarious Employer Liability Did Not And Cannot Rewrite Congress's Statutory Text Limiting Participation Claims.................................................................43

B. DeMasters' And *Amici's* Attempt to Impermissibly Expand Opposition Claims is Contrary to Precedent and the Very Concept of Providing Meaningful Opposition to Conduct Violative to Title VII.......................................................................44

 1. DeMasters' Attempts to Expand the Definition of "Opposition" to Capture *Subjective, Unexpressed* Opinion are Meritless .......................................................45

 2. The Definition of Opposition Applied in *Crawford*, *Pitrolo* and by the District Court Below Supports the Policy Underlying § 704(a).......................................................48

 3. The Job Duties Limitation On Opposition Claims is a Well-Established and Sensible Limitation on Opposition Claims ...................51

4.    There is No "Inexplicable Gap" Between
      Opposition and Participation Claims ............................53

5.    The *Burlington* and *Robinson* Holdings Are
      Irrelevant Here ................................................................54

      (a)    *Burlington* Relates Only To The
             Second Element of a Retaliation
             Claim (Adverse Action) Which Is Not
             Disputed Here; It Does Not, As *Amici*
             Try To Suggest, Supplant The First
             Element (Protected Activity) ................................54

      (b)    *Robinson* Is Likewise Irrelevant To
             An Analysis Of Protected Activity .....................56

CONCLUSION ........................................................................................58

ORAL ARGUMENT STATEMENT ....................................................58

CERTIFICATE OF COMPLIANCE .....................................................59

CERTIFICATE OF FILING AND SERVICE .......................................60

# TABLE OF AUTHORITIES

## Cases

*Abbott v. Crown Motor Co.*,
   348 F.3d 537 (6th Cir. 2003) ................................................................40

*Ackel v. Nat'l Communications, Inc.*,
   339 F.3d 376 (5th Cir. 2003) ..............................................................19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................12, 17

*Bass v. E.I. Dupont De Nemours & Co.*,
   324 F.3d 761 (4th Cir.), *cert. denied*, 540 U.S. 940 (2003) .............12, 13, 23, 25

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................12, 17

*Booker v. Brown & Williamson Tobacco Co., Inc.*,
   879 F.2d 1304 (6th Cir. 1989) ............................................................53

*Bourne v. Sch. Bd. Of Broward Cnty.*,
   508 F. App'x 907, 2013 WL 385420 (11th Cir.), *cert. denied*,
   133 S. Ct. 2836 (2013) ......................................................................40

*Brower v. Runyon*,
   178 F.3d 1002 (8th Cir. 1999) ............................................................40

*Brush v. Sears Holding Corp.*,
   466 F. App'x 781 (11th Cir. 2012), *cert. denied*,
   133 S. Ct. 981 (2013) ..................................................................*passim*

*Burlington Industries, Inc. v. Ellerth*,
   524 U.S. 742 (1998) ..........................................................................43

*Burlington N. & S.F.R. Co. v. White*,
   548 U.S. 53 (2006) ....................................................................*passim*

*Claudio-Gotay v. Becton Dickinson Caribe, Ltd.*,
   375 F.3d 99 (1st Cir. 2004), *cert. denied*, 543 U.S. 1120 (2005) ......................22

*Collazo v. Bristol-Myers Squibb Mfg.*,
617 F.3d 39 (1st Cir. 2010)....................................................................46, 47, 52

*Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*,
129 S. Ct. 846 (2009)...........................................................................................45

*Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*,
555 U.S. 271 (2009)......................................................................................*passim*

*Darveau v. Detecon, Inc.*,
515 F.3d 334 (4th Cir.2008) ...............................................................................52

*Dickson v. Microsoft Corp.*,
309 F.3d 193 (4th Cir. 2002), *cert. denied*, 539 U.S. 953 (2003) ......................13

*E.E.O.C. v. Ohio Edison Co.*,
7 F.3d 541 (6th Cir. 1993) ...................................................................................37

*E.E.O.C. v. Total Sys. Servs., Inc.*,
221 F.3d 1171 (11th Cir. 2000) ...................................................41, 42, 43, 44

*EEOC v. HBE Corp.*,
135 F.3d 543 (8th Cir. 1998) ................................................................20, 24, 52

*Ellis v. Compass Grp. USA, Inc.*,
426 F. App'x 292 (5th Cir. 2011) ........................................................................40

*Entrekin v. City of Panama City Florida*,
376 F. App'x 987, 2010 WL 1709755 (11th Cir. 2010)............................*passim*

*Faragher v. City of Boca Raton*,
524 U.S. 775 (1998)......................................................................................43, 49

*Fisher v. Town of Orange*,
885 F. Supp. 2d 468 (D. Mass 2012)..................................................................47

*Fogleman v. Mercy Hosp., Inc.*,
283 F.3d 561 (3d Cir.), *cert. denied*, 537 U.S. 824 (2002) ................................34

*Garnett v. Holder*,
2013 WL 453086 (N.D. Ala. 2013)....................................................................27

vi

*Gonzalez v. New York State Dep't of Corr. Servs. Fishkill Corr. Facility*,
   122 F. Supp. 2d 335 (N.D.N.Y. 2000)................................................37

*Grubic v. City of Waco,*
   262 F. App'x 665 (5th Cir. 2008)....................................................55

*Hagan v. Echostar Satellite, LLC*,
   529 F.3d 617 (5th Cir. 2008) .........................................................22

*Harris-Rogers v. Ferguson Enterprises*,
   2011 WL 4460574 (E.D.N.C. 2011).....................................19, 22, 32

*Hill v. Belk Stores Services, Inc.*,
   2007 WL 2997556 (W.D.N.C. 2007) ...................................20, 31, 51

*Holt v. JTM Indus., Inc.*,
   89 F.3d 1224 (5th Cir. 1996), *cert. denied*, 520 U.S. 1229 (1997) ...................34

*Johnson v. Portfolio Recovery Associates, LLC*,
   682 F. Supp. 2d 560 (E.D. Va. 2009) ...............................13, 15, 25, 30

*Jordan v. Alternative Res. Corp.*,
   458 F.3d 322 (4th Cir. 2006), *cert. denied*,
   549 U.S. 1362 (2007).........................................................13, 14, 26

*Laughlin v. Metro Washington Airports Auth.*,
   149 F.3d 253 (4th Cir. 1998) .....................................................*passim*

*Lettieri v. Equant Inc.*,
   478 F.3d 640 (4th Cir. 2007) ..........................................................55

*Lightner v. City of Wilmington, N.C.*,
   545 F.3d 260 (4th Cir. 2008) ..........................................................45

*Mann v. First Union Nat. Bank*,
   185 F. App'x 242, 2006 WL 1676397 (4th Cir. 2006).....................26

*McDonnell v. Cisneros*,
   84 F.3d 256 (7th Cir. 1996) ......................................................47, 48

*McKenzie v. Renberg's Inc.*,
   94 F.3d 1478 (10th Cir. 1996), *cert. denied*,
   520 U.S. 1186 (1997)..........................................................22, 24, 52

*McNair v. Computer Data Sys., Inc.*,
  1999 WL 30959 (4th Cir. 1999) .......................................................9, 15, 20, 45

*Mezu v. Morgan State Univ.*,
  2013 WL 3934013 (D. Md. 2013) ....................................................42

*Moore v. City of Philadelphia*,
  461 F.3d 331 (3d Cir. 2006) ................................................10, 19, 24

*N.L.R.B. v. Advertisers Mfg. Co.*,
  823 F.2d 1086 (7th Cir. 1987) ..........................................................35

*Pitrolo v. County of Buncombe, N.C.*,
  2009 WL 1010634 (4th Cir.) 2009 ..........................................*passim*

*Rice v. Spinx Co., Inc.*,
  2011 WL 7450630 (D.S.C. 2011)....................................................20, 24, 31

*Rice v. Spinx Co., Inc.*,
  No. 6:10-01622-JMC, 2012 WL 684019 (D.S.C. Mar. 2, 2012) .................22, 51

*Robinson v. Shell Oil Co.*,
  519 U.S. 337 (1997)....................................................54, 56, 57, 58

*Silver v. KCA, Inc.*,
  586 F.2d 138 (9th Cir. 1978) ..........................................................41

*Smith v. Riceland Foods, Inc.*,
  151 F.3d 813 (8th Cir. 1998) ..........................................................34

*Summers v. Altarum Inst., Corp.*,
  740 F.3d 325 (4th Cir. 2014) ..........................................................12

*Swierkiewicz v. Sorema N. A.*,
  534 U.S. 506 (2002)........................................................................13

*Taubman Realty Group Ltd. P'ship v. Mineta*,
  320 F.3d 475 (4th Cir. 2003) ..........................................................12

*Thomas v. Goodyear Tire & Rubber Co.*,
  2001 WL 34790222 (W.D. Va. 2001) *aff'd.*,
  31 F. App'x 101 (4th Cir. 2002)......................................................15

*Thompson v. N. Am. Stainless, LP*,
  131 S. Ct. 863 (2011)...............................................................*passim*

*Thompson v. N. Am. Stainless, LP*,
  567 F.3d 804 (6th Cir. 2009), *rev'd and remanded*,
  131 S. Ct. 863 (2011)...............................................................34, 35

*Townsend v. Benjamin Enterprises, Inc.*,
  679 F.3d 41 (2nd Cir. 2012) ...................................................*passim*

*Univ. of Texas SW. Med. Ctr. v. Nassar*,
  133 S. Ct. 2517 (2013) .............................................................*passim*

*Vasconcelos v. Meese*,
  907 F.2d 111 (9th Cir. 1990) ...........................................................40

*Vidal v. Ramallo Bros. Printing, Inc.*,
  380 F.Supp.2d 60 (D.P.R. 2005) ....................................................20

*Weeks v. Kansas*,
  503 F. App'x 640 (10th Cir. 2012)...................................................52

**Statutes**

42 U.S.C. 2000e-3(a) ....................................................................*passim*

42 U.S.C. § 2000e-5(b) .........................................................................42

42 U.S.C. §§ 2000e–2000e–17 .............................................................41

42 U.S.C. §§ 2000e–5, 2000e–8, 2000e–9 ...........................................41

Title VII, 42 U.S.C. § 2000e, *et seq.*................................................*passim*

**Rules**

Rule 12(b)(6)..........................................................................................12

**Other Authorities**

EEOC Compl. Man. § 8-II(B)(1)-(2), 2006 WL 4672793 (June 1, 2006) ..............45

EEOC Compliance Manual Vol. 2, § 8-II, C.2......................................................15

Random House Dictionary of the English Language 1414 (2nd Ed. 1987)............48

Webster's New International Dictionary 1710 (2d ed.1958) ...................................45

Webster's New Twentieth Century Dictionary 1306 (2nd Ed. 1966) ....................48

# STATEMENT OF THE ISSUES

I.   The District Court Correctly Held that DeMasters' First Amended Complaint "fails to raise plausible allegations that he engaged in protected activity under the participation or opposition clause of 42 U.S.C. § 2000e-3(a)." (JA 98.)[1]

    A.   The District Court Correctly Held that DeMasters Failed to State a Participation Claim Because it was Uncontroverted that DeMasters had Nothing to do with Doe's EEOC Charge or Title VII Lawsuit.

    B.   The District Court Correctly Held that DeMasters Failed to State an Opposition Claim Where He Failed to Allege That He Expressed Purposive Opposition to his Employer Regarding Any Alleged Employment Practice Prohibited Under Title VII.

    C.   The District Court Correctly Applied *Thompson v. N. Am. Stainless, LP*, 131 S. Ct. 863, 870 (2011), And Properly Held That DeMasters Does Not Fall Within the "Zone of Interest" for Third Party Claims where DeMasters Did Not Undertake Protected Activity and was not Terminated to Punish Doe.

II.  DeMasters' and the *Amici's* Efforts to Expand Retaliation Claims Far Beyond Current Parameters Runs Afoul of Precedent of the Supreme Court, This Court, and Congressional Intent.

# STATEMENT OF THE CASE

Neil DeMasters ("DeMasters") filed a Title VII[2] retaliation claim against

Carilion Clinic, Carilion Medical Center, and Carilion Behavioral Health, Inc.

(collectively, "Carilion" or "Defendants.") (JA 6-11.) When Defendants filed a

Motion to Dismiss, (JA 12-13), DeMasters swiftly filed for leave to amend, (JA

---

[1] The Joint Appendix is cited herein as ("JA ___.")

[2] 42 U.S.C. § 2000e, *et seq.*

1

15-16), and subsequently filed a First Amended Complaint, expanding on his initial allegations. (JA 26-34.) Defendants, again, moved to dismiss. (JA 35-36.) Following extensive briefing and oral argument, the District Court granted Carilion's Motion and dismissed the First Amended Complaint. (JA 99.) The District Court reached this conclusion because DeMasters failed to plausibly allege "that he was retaliated against for his participation in another's Title VII complaint or for his communicated, purposive opposition to workplace discrimination." (JA 81.)

**STATEMENT OF THE FACTS**

**A.    <u>Doe Raises Claims of Alleged Sexual Harassment By a Manager</u>.**

DeMasters was a consultant in the Employee Assistance Program ("EAP") in Carilion's behavioral health unit from July 24, 2006 until his termination on August 10, 2011. (JA 28 at ¶ 11.) In 2008, in his capacity as an EAP counselor, DeMasters allegedly met with John Doe ("Doe") (pseudonym), an employee at Carilion's Roanoke Memorial Hospital, who was allegedly experiencing work place problems. (*Id*. at ¶ 12.) All of DeMasters' alleged contact with Doe occurred in October, 2008. (*See generally*, JA 28-31 at ¶¶ 11-25.) Thus, all of DeMasters' Title VII claims hinge on the allegation that he was retaliated against in 2011 based on his connection to Doe in 2008. (*See generally*, JA 26-34.)

DeMasters first met Doe on October 17, 2008, after Doe received a referral to the Carilion EAP. (JA 28 at ¶¶ 11-12.) In the counseling session on October 17, 2008, Doe allegedly told DeMasters that Doe believed that he was the victim of sexual harassment by a particular manager (the "Alleged Harasser"). (JA 28-29 at ¶ 13.) During that session, DeMasters allegedly: (a) told Doe that it appeared to him that harassment had occurred, (b) reviewed Carilion's sexual harassment policy and procedures with Doe, and (c) indicated that he would "relay" the substance of Doe's complaint to Carilion. (*Id.*)

### B.  DeMasters "Relayed" the Sexual Discrimination Complaint and the Alleged Harasser was Swiftly Terminated.

On the day of their initial meeting, DeMasters claims that he "contacted Carilion's human resources department" and merely "*relayed the substance* of Doe's harassment complaint." (JA 29 at ¶ 14) (emphasis added). Carilion's human resources ("HR") department stated that it would follow up on the complaint and get back to Doe as soon as possible. (*Id.*) Between October 17 and October 23, 2008, Carilion investigated Doe's complaint and the Alleged Harasser was terminated. (*See id.* at ¶¶ 15-16.) Thus, DeMasters alleged that he only acted as an intermediary; he does not allege that he expressed any views, beliefs or opinions about Doe's sexual harassment allegations to Carilion. (*See* JA 28-29 at ¶¶ 12-16.)

3

### C.    DeMasters' Limited Contact with Doe After the Alleged Harasser's Firing.

#### 1.    Alleged Hostility From the Fired Man's Friends.

On October 23, 2008, **after** the Alleged Harasser was terminated and the alleged sexual harassment ended, Doe allegedly called DeMasters and reported that Doe's Department Director ("Director') had "permitted the [Alleged Harasser] to come into the hospital to retrieve his personal belongings."  (JA 29 at ¶ 16.)[3] DeMasters allegedly met with Doe the next day whereupon Doe told DeMasters that he [Doe] felt uncomfortable with the Director and allegedly was facing "hostility" from coworkers "who were sympathetic with or friends of the [Alleged Harasser]."  (*Id.* at ¶ 17.)

Although the First Amended Complaint uses the conclusory phrase "ongoing hostile work environment" to describe the situation, it does not contain any factual allegations that describe or support that such an environment existed.  (*See id*. at ¶¶ 17-18.)  No instances of "hostility" or supporting facts are described.  (JA 28-34.) Notably, Doe's sexual harassment concerns were resolved with the Alleged Harasser's firing; there is *no allegation* that the subsequent "hostile environment"

---

[3] Doe claims that he had been told that the Alleged Harasser would not be allowed back on hospital property after his employment had ended.   (*Id*. at ¶ 16.)

issues were related to Title VII discrimination – *e.g.* based on Doe's gender or any other protected status. (*Id.*)

On October 27, 2008, DeMasters met with "colleagues in EAP" to discuss the situation. (*Id.* at ¶ 18.)[4] Following the meeting with his "colleagues," DeMasters claims that he called Carilion's HR department to "discuss the matter" and he simply "left a message with [a] representative" of that department. (JA 30 at ¶ 19.) DeMasters does not describe the substance or content of this "message." (*Id.*) Specifically, DeMasters does not allege that he was complaining or commenting on any alleged *discriminatory* treatment of Doe by either Doe's Director or his co-workers in this communication. (*Id.*)

### 2. Carilion's Investigation of Doe's "Hostile Environment" <u>Concerns</u>.

On October 28, 2008, DeMasters allegedly received a call from Carilion's Human Resources Manager, Joe Baer ("Baer"). (*Id.* at ¶ 20.) Baer allegedly told DeMasters that Doe had complained directly to Baer. (*Id.*) In response, DeMasters allegedly "offered Baer the services of EAP with respect to coaching the department director as to how human resources might better respond to Doe's complaint." (*Id.*) Again, DeMasters does not allege that he complained about any discriminatory treatment of Doe during this call with Baer, and there is no

---

[4] The First Amended Complaint does not identify the EAP colleagues DeMasters allegedly met with. (*Id.* at ¶ 18.)

allegation in the First Amended Complaint that Carilion's handling of Doe's concerns was itself discriminatory.  (*See generally*, JA 26-34.)

On October 31, 2008, Doe again met with DeMasters regarding the purported "ongoing hostile work environment," and Doe stated that he was frustrated with management's response to Doe's complaint.  (JA 30 at ¶ 21.) During this conversation with Doe, DeMasters only "noted that he needed to get caught up on Carilion's corporate strategy." (*Id.*)  There is no allegation that DeMasters contacted Baer or any other manager at Carilion regarding this meeting with Doe.  (*See generally*, JA 26-34.)  In fact, the First Amended Complaint does not reflect that Doe ever spoke with DeMasters again after October 31, 2008.  (*Id.*)

On November 12, 2008, Baer informed DeMasters that he was working with Doe's Director and coaching him concerning an appropriate response.  (JA 30 at ¶ 23.)  At some point during this period, DeMasters told Baer that "he felt that Carilion was not handling the case properly." (JA 31 at ¶ 24.)  DeMasters does not allege any facts to explain why he purportedly felt that way.  (*See generally*, JA 26-34.)  More importantly, DeMasters does not allege that Carilion's handling of its investigation was itself discriminatory, and he does not allege that he was complaining about any practice made unlawful under Title VII.  (*Id.*)

**D.    Much Later, and Wholly Unbeknownst to DeMasters, Doe Files an EEOC Charge and Title VII Suit, and DeMasters Is Not Involved in Either Proceeding.**

On October 28, 2010, *nearly two years after DeMasters last met with Doe*, Doe filed a discrimination suit against Carilion in federal court.  (JA 31 at ¶ 26.) Prior to filing suit, Doe filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), and the EEOC issued Doe a right-to-sue notice.  (*Id.*)   There is no allegation in the Amended Complaint that DeMasters played *any* role in Doe's EEOC charge.  (*See generally*, JA 26-34.) Indeed, there is no allegation DeMasters was even aware of the EEOC charge or Title VII suit at any point prior to December 14, 2010.  (*See* JA 31 at ¶ 25.)

On December 14, 2010, after Doe's lawsuit was filed, DeMasters alleges that a Carilion manager called to *inform* him about the EEOC complaint and civil suit and asked DeMasters about Doe's case.  (JA 31 at ¶ 25.)   In response, DeMasters only "acknowledged that Doe had been seen in the EAP," but DeMasters "did not reveal any [other] details."  (*Id.*)  There is no allegation that DeMasters was involved in any follow-up communications during the pendency of Doe's litigation.  (*See generally*, JA 26-34.)  Additionally, after learning of Doe's lawsuit, DeMasters did not participate in any way in the legal proceedings brought by Doe.  (*Id.*)

### E.    Doe's Suit is Settled and DeMasters is Subsequently Interviewed and Terminated.

Carilion and Doe were able to resolve Doe's sexual discrimination lawsuit, and Doe's case was dismissed by stipulation of the parties with an order of dismissal being entered on July 14, 2011.  (JA 31 at ¶ 26.)  Several weeks after Carilion and Doe had resolved their dispute, DeMasters was allegedly called to a meeting with several Carilion managers on August 8, 2011.  (JA 31-32 at ¶¶ 27-28.)  During this meeting, DeMasters allegedly stated that he told Doe in his 2008 counseling session that what happened to him at work was harassment.  (*Id.* at ¶ 28; *See* JA 28 at ¶ 13.)   This statement to Carilion officials in 2011 came long after any alleged discriminatory conduct toward Doe had occurred – and after Doe's claims had been addressed and resolved by Carilion.  (JA 31 at ¶ 26.)

During the August 8, 2011 meeting, DeMasters was allegedly told that he had failed to protect Carilion's interest, and thereafter, on August 10, 2011, Carilion sent a letter to DeMasters stating that he had "fail[ed] to perform or act in a manner that is consistent with the best interests of Carilion Clinic," and DeMasters was terminated.  (JA 32 at ¶¶ 29-31.)  Based on this sequence of events, DeMasters alleged that he was retaliated against in violation of Title VII.  (JA 33 at ¶¶ 34-37.)  The District Court concluded, however, that DeMasters' First Amended Complaint does not plausibly allege that he engaged in protected activity.  (JA 81, 98.)

8

## <u>SUMMARY OF ARGUMENT</u>

DeMasters' alleged conduct simply did not constitute "protected activity" under either the participation or opposition clauses of 42 U.S.C. § 2000e-3(a). To fall within the protection of the participation clause, the alleged activity must directly relate to participation in proceedings "under this subchapter" (i.e. participation in the machinery set up by Title VII to enforce its provisions) – that is activity *after* the filing of a formal charge with the EEOC. *See McNair v. Computer Data Sys., Inc.*, 1999 WL 30959, at *5 (4th Cir. 1999); *Townsend v. Benjamin Enterprises, Inc.*, 679 F.3d 41, 49 (2nd Cir. 2012). Participation "does not include involvement in an internal, in-house investigation conducted apart from a formal charge with the E.E.O.C." *Townsend*, 679 F.3d at 49; *see Laughlin v. Metro Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). DeMasters alleged nothing in the First Amended Complaint to invoke the protection of the participation clause. He was never involved in – or even aware of – Doe's EEOC proceedings and he "played no role" in Doe's Title VII action. (JA 88.) As the District Court correctly held, this "lack of temporal proximity between DeMasters' interactions with Doe and Doe's institution of a Title VII proceeding proves fatal to DeMasters' participation clause claim." (JA 89.) *Laughlin*, 149 F.3d at 259. (*Infra* at 14-18.)

9

Similarly, Doe alleges nothing to invoke the protection of the opposition
clause.  For such protection, a plaintiff must voice purposive opposition to his
employer regarding discriminatory practices violative of Title VII.  *Pitrolo v.
County of Buncombe, N.C.*, 2009 WL 1010634, at *3 (4th Cir.) 2009.)  It is well-
settled that simply relaying the substance of another party's claim to proper
authorities is not purposive conduct.  *Moore v. City of Philadelphia*, 461 F.3d 331,
350 (3d Cir. 2006).  DeMasters' ferrying of Doe's sexual discrimination complaint
to the human resources department, consistent with his EAP role, did not constitute
oppositional conduct.  (*Infra* at 18-24.)

Moreover, after Carilion promptly fired the Alleged Harasser, the purported
sexual discrimination with respect to Doe was resolved.  While Doe subsequently
complained of the resulting post-firing environment due to his interaction with the
fired man's friends, there is no allegation that any of this alleged "hostile work
environment" involved a practice prohibited under Title VII (*i.e.* sex or gender
discrimination.)  Further, there is no allegation that the subsequent internal
investigation by Carilion was discriminatory, nor that it involved a practice
violative of Title VII.  It is well-settled that:  "Disagreement with internal
procedures does not equate with 'protected activity' opposing discriminatory
practices."  *Brush v. Sears Holding Corp.*, 466 F. App'x 781, 787 (11th Cir. 2012),
*cert. denied*, 133 S. Ct. 981 (2013); JA 95.)  Here, DeMasters fails to allege

10

purposive opposition – he simply never raised opposition to his employer regarding practices violative of Title VII. (*Infra* at 24-32.)

Not having pled participation or opposition, DeMasters attempts to frame this as a "zone of interest" case under *Thompson v. N. Am. Stainless, LP*, 131 S. Ct. 863 (2011). DeMasters' argument is meritless given the lack of any familial or close personal relationship between Doe and DeMasters and because DeMasters was not terminated in order to punish Doe. Indeed, this would have been a legal impossibility because Defendants had already resolved any issues they had with Doe when DeMasters was terminated. (*Infra* at 33-38.)

Because long-standing Title VII case law forecloses a retaliation claim in DeMasters' case, he and the *Amici* openly advocate a dramatic expansion of the scope of retaliation claims. None of the theories they posit are appropriate under the governing statutory language or precedent. Similar attempts to overturn existing law have been rejected by other courts and would do damage to well-defined distinctions between participation and opposition claims. Moreover, DeMasters' over-reaching view of the scope of retaliation claims is contrary to Congressional intent and Supreme Court case law. *See Univ. of Texas SW. Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013). (*Infra* at 38-58.)

## STANDARD OF REVIEW

An appellate court "review[s] *de novo* an appeal from a Rule 12(b)(6) dismissal, accepting the complaint as true and drawing reasonable inferences in the plaintiff's favor." *Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 328 (4th Cir. 2014). A complaint *must* be dismissed, however, if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555. While the allegations contained in a complaint must be viewed in the light most favorable to the plaintiff, courts need not credit conclusory legal terms and allegations that are not reasonably supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Taubman Realty Group Ltd. P'ship v. Mineta*, 320 F.3d 475, 479 (4th Cir. 2003).

A plaintiff in a discrimination case still "is required to allege facts that support a claim for relief." *Bass v. E.I. Dupont De Nemours & Co.*, 324 F.3d 761, 765 (4th Cir.), *cert. denied*, 540 U.S. 940 (2003). Thus, for example, "the words 'hostile work environment' are not talismanic, for they are but a legal conclusion; it is the alleged facts supporting those words, construed liberally, which are the proper focus at the motion to dismiss stage." *Id.*

Similarly, a court evaluating a retaliation claim must "not assume that [p]laintiff made complaints of . . . discrimination to his employer on the basis of

vague references in the Complaint." *Johnson v. Portfolio Recovery Associates,*

*LLC*, 682 F. Supp. 2d 560, 578 (E.D. Va. 2009). Bare allegations, "without

corresponding supporting facts, are insufficient to give fair notice to Defendant and

to make Plaintiff's claim plausible on its face." *Id.*; *see Jordan v. Alternative Res.*

*Corp.,* 458 F.3d 322, 344-47 (4th Cir. 2006), *cert. denied*, 549 U.S. 1362 (2007).[5]

## <u>ARGUMENTS AND AUTHORITIES</u>

I.   **The District Court Correctly Held that DeMasters Could Not Show that He was Engaged in Protected Activity and, Therefore, <u>DeMasters Could Not State a Valid Retaliation Claim.</u>**

Section 704(a) of Title VII prohibits employers from retaliating against

employees who engage in activity protected thereunder by either "opposing"

discrimination or "participating" in the Title VII statutory process. Specifically,

Section 704(a) provides, in pertinent part:

> It shall be an unlawful employment practice for an
> employer to discriminate against any of his
> employees . . . because he has opposed any practice made
> an unlawful employment practice by this [title] . . . or

---

[5] The Supreme Court's decision in *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511-12 (2002) does not alter plaintiff's obligation to plausibly plead the essential elements of a retaliation claim. In *Swierkiewicz*, the Court recognized that in civil rights litigation, "the *prima facie* case is a standard of proof distinct from the essential elements of a cause of action." *Jordan*, 458 F.3d at 346. *Swierkiewicz*, however, "left untouched 'the burden of a plaintiff to allege facts sufficient to state all the *elements* of [his] claim.'" *Id*. (emphasis in original) (quoting *Bass*, 324 F.3d at 765 and citing *Dickson v. Microsoft Corp.,* 309 F.3d 193, 213 (4th Cir. 2002), *cert. denied*, 539 U.S. 953 (2003).

because he has . . . assisted, or participated in any manner
in an investigation, proceeding, or hearing under this
[title].

42 U.S.C. § 2000e-3(a) (brackets added.)

The threshold question for any retaliation claim is whether the plaintiff

engaged in "protected activity." *Laughlin*, 149 F.3d at 259.[6]  Protected activity is

divided into two categories: (1) participation, and (2) opposition.  *Id*. (citing 42

U.S.C. § 2000e-3(a)).  Here, as the District Court correctly determined, DeMasters

never participated in any manner in Doe's proceedings before the EEOC or under

any Title VII statutory process.  DeMasters also never voiced any purposive

opposition to Carilion with respect to any alleged employment practice that is

unlawful under Title VII.

> **A.    The District Court Correctly Held that DeMasters Failed to Allege a Cognizable Claim for Retaliation Under the Participation Clause Because DeMasters Did Not Allege <u>Participation in a Title VII Statutory Process</u>.**

The "purpose of [the] participation clause is to protect the employee who

utilizes the tools provided by Congress to protect his rights."  *Laughlin*, 149 F.3d at

259.  Thus, to fall within the protection of the participation clause, *"at minimum,*

---

[6] In order to plead a retaliation claim, a plaintiff must allege three elements: "(1) that [he] engaged in protected activity, (2) that an adverse employment action was taken against [him], and (3) that there was a causal link between the protected activity and the adverse employment action." *Laughlin*, 149 F.3d at 258 (internal citation omitted); *Jordan*, 458 F.3d at 346.

14

*the alleged protected activity must directly relate to the filing of an EEOC charge."  Johnson*, 682 F. Supp. 2d at 582-83 (emphasis added) (citing EEOC Guidance on Investigating, Analyzing Retaliation Claims, EEOC Compliance Manual Vol. 2, § 8-II, C.2); *see also McNair v. Computer Data Sys., Inc.*, 1999 WL 30959, at *5 (4th Cir. 1999) ("Because appellant alleges that [defendant] retaliated against her for actions taken *before* she filed her first EEOC charge[,] we need only consider this claim under the terms of the section's 'opposition clause'") (emphasis in original, brackets added); *Thomas v. Goodyear Tire & Rubber Co.*, 2001 WL 34790222 *3 (W.D. Va. 2001) *aff'd.*, 31 F. App'x 101 (4th Cir. 2002) (recognizing that the plaintiff's inquiries could not qualify as participation under Title VII because his EEOC charge was not filed until after his alleged inquiries and termination).

Activities that are protected under the participation prong are:  "(1) making a charge [with the EEOC]; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title VII." *Laughlin*, 149 F.3d at 259 (citing Section 42 U.S.C. § 2000e-3(a)).  The statutory language of Title VII is clear and its precision "makes it incorrect to infer that Congress meant anything other than what the text [says] on the subject of retaliation." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2530, 2532 (2013) (brackets supplied.)

With these parameters in mind, DeMasters has alleged *nothing* in the First Amended Complaint to invoke the protection of the participation clause. First, there is no allegation that DeMasters actually participated or assisted in the filing or investigation of Doe's EEOC charge. (*See generally*, JA 26-34.) In fact, DeMasters did not even allege that he was aware of Doe's EEOC charge until December 14, 2010 (more than two years after DeMasters last spoke with Doe, and more than a month after Doe filed suit) – which came after the EEOC had ceased its investigation of Doe's claims and issued Doe a right-to-sue notice. (JA 31 at ¶¶ 25-26.) Certainly, Doe was *not* pursuing an EEOC charge when DeMasters spoke to him in 2008. (*See* JA 61) (counsel for DeMasters conceding this point at oral argument "for the purpose of the work the Court has to do.")

Second, there is also no allegation that DeMasters participated in any legally protected way in the subsequent lawsuit filed by Doe. For instance, DeMasters only alleges that Carilion's managers called him on December 14, 2010 to *inform* him that Doe had filed an EEOC charge and civil suit and asked him about Doe's case. (JA 31 at ¶ 25.)[7] As the District Court pointed out, upon finally learning of Doe's lawsuit in 2010, DeMasters "played no role in it." (JA 88.)

---

[7] In response, DeMasters merely "acknowledged that Doe had been seen in the EAP but did not reveal any details from [his] notes." (JA 31 at ¶ 25.) Consequently, DeMasters' "acknowledgement" of Doe's EAP counseling conveyed no substantive information to Carilion. In fact, Carilion was well aware (cont'd. to next page . . .)

16

The District Court adeptly cut through DeMasters' attempt to expand or circumvent existing, well-defined "participation" requirements:

> In arguing his activity is protected under the participation clause, DeMasters ignores the uncontroverted fact that he had nothing to do with Doe's EEOC complaint or Title VII lawsuit. DeMasters does not allege that he agreed to testify or serve as a witness for Doe or that he was involved in any way in Doe's EEOC complaint or subsequent lawsuit. Indeed, DeMasters did not even know Doe had filed an EEOC complaint until 2010, two years after he last communicated with Doe. Am. Comp., Dkt. # 21, at ¶¶ 23, 25. (JA 87.)

The undisputed facts are that Doe was not engaged in either an EEOC charge or Title VII claim at the time he dealt with DeMasters. (*See generally*, JA 24-32.) Certainly, DeMasters never made a charge, testified, assisted or participated in a Title VII proceeding as required under 42 U.S.C. § 2000e-3(a). (*See* JA 89.) The Court concluded that DeMasters could not evade this temporal flaw in his theory:

> DeMasters' sole argument under the participation clause is that his discussions with Doe in 2008 assisted Doe's

---

(. . . cont'd. from previous page.)

of the fact that Doe had been seen by EAP because Doe was "referred by [Carilion] to EAP" in the first place. (JA 28 at ¶ 12.) Thus, if DeMasters rests his participation claim on the allegation that he "acknowledged that Doe had been seen by EAP," his claim should be dismissed as utterly implausible because no reasonable trier of fact could find that DeMasters was terminated because he repeated the uncontroversial fact that Doe was seen by EAP—a fact known to Carilion since October 17, 2008. *See Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 679.

17

> later-filed EEOC complaint and Title VII action.
> Because there was no ongoing Title VII investigation or
> proceeding *at the time* DeMasters was communicating
> with Doe, this argument fails as a matter of law.

(JA 88) (emphasis added); *see Laughlin*, 149 F.3d at 259 (no retaliation claim

where plaintiff/secretary provided employee documents before any suit was

initiated: "There was quite simply no ongoing 'investigation, proceeding or

hearing' in which Laughlin could participate at the time she discovered the

documents on her boss's desk.")

As the District Court aptly and correctly summed up: "The lack of temporal

proximity between DeMasters' interactions with Doe and Doe's institution of a

Title VII proceeding proves fatal to DeMasters' participation clause claim." (JA

89.) (emphasis added.)

### B. DeMasters Failed to Allege a Cognizable Claim for Retaliation Under the Opposition Clause.

To fall within the opposition clause, a plaintiff must allege that he was

engaged in conduct such as "utilizing informal grievance procedures[,] staging

informal protests and voicing one's opinions in order to bring attention to an

employer's discriminatory activities." *Laughlin*, 149 F.3d at 259. More

importantly, the plaintiff must bring his complaint about discriminatory activities

to his employer's attention *through "purposive conduct" directed to his employer*;

it is not sufficient for the employer to learn about alleged opposition through the

unintentional conduct of the employee or through conduct directed to co-workers

or others. *See Pitrolo v. County of Buncombe, N.C.*, 2009 WL 1010634, at *3 (4th

Cir. 2009) (finding that the plaintiff's complaint to her father was insufficient to

constitute protected opposition even though her father contacted the employer to

complain about discrimination); *see also Harris-Rogers v. Ferguson Enterprises*,

2011 WL 4460574, at *7 (E.D.N.C. 2011) (finding that the plaintiff's complaint in

a mass email that was intended for a co-worker, but inadvertently sent to a larger

group that included management personnel, did not rise to the level of protected

opposition under *Pitrolo* and  *Laughlin*)[8].

In addition, "'opposition' to unlawful discrimination cannot be equivocal";

"[i]f litigants claim to be retaliated against for having opposed discrimination, *they*

*must have stood in opposition to it – not just objectively reported its existence or*

*attempted to serve as an intermediary*."  *Moore v. City of Philadelphia*, 461 F.3d

331, 350 (3d Cir. 2006) (emphasis added).  As a result, it is well-settled that a

plaintiff cannot rely on conduct that falls within the normal scope of his job duties

---

[8] In *Pitrolo* even though the employer became aware of the plaintiff's complaint, her conduct was not oppositional because "[the plaintiff] did not communicate her belief to her employer and [the plaintiff] was not attempting to bring attention to the alleged discriminatory conduct").  In *Harris-Rogers*, the unintended mass mailing, again, was not oppositional because it was not "sent with the intention of voicing opposition about [the employer's] policies [in order] to bring attention to any purported discriminatory activities by [the employer]."  *Id.* at *7; *see also, Ackel v. Nat'l Communications, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003).

to allege protected activities. *See, e.g., Rice v. Spinx Co., Inc.*, 2011 WL 7450630, *3 (D.S.C. 2011) ("[A] plaintiff has not engaged in protected activity if he has merely discharged the duties of his job"); *Hill v. Belk Stores Services, Inc.*, 2007 WL 2997556 *1 (W.D.N.C. 2007) (finding the plaintiff's actions were not legally protected because he acted only within the scope of his duties, and actions within the scope of an employee's duties are not protected for the purpose of Title VII); *Brush v. Sears Holdings Corp.*, 466 F. App'x 781, 787 (11th Cir. 2012), *cert. denied*, 133 S. Ct. 981 (2013); *Vidal v. Ramallo Bros. Printing, Inc.*, 380 F.Supp.2d 60 (D.P.R. 2005). Rather, for activity to constitute protected opposition, a plaintiff must "step outside" his normal employment role and take "some action against a discriminatory policy." *EEOC v. HBE Corp.*, 135 F.3d 543, 554 (8th Cir. 1998) (internal citation omitted.)

Thus, opposition to discrimination requires more than merely complaining to co-workers or "relaying" the substance of another's complaint as DeMasters did here; rather, oppositional views or beliefs *must be* purposively directed to the employer in order to bring the employer's attention to discriminatory conduct that is prohibited under Title VII. As the District Court below correctly explained:

> The opposition clause, by its very terms, requires that the employees at least have actually opposed employment practices made unlawful by Title VII. That is to say, the clause protects opposition neither to all unlawful employment practices nor to practices that employees simply think are unfair. *McNair v. Computer Data Sys.,*

*Inc.*, 172 F.3d 863, 1999 WL 30959, at *5 (4th Cir. 1999).

(JA 89-90.)

### 1.    DeMasters' Conversations with Doe are Not Oppositional.

DeMasters alleges that he told Doe during his EAP counseling session on October 17, 2008 that Doe was a victim of sexual harassment, and at some point he told Doe that Carilion had mishandled Doe's "hostile environment" complaint. (*See* JA 28 at ¶ 12; JA 31 at ¶ 24.)  The District Court correctly held that "DeMasters' conversations with Doe are not oppositional" because "[t]hese statements were not made to Carilion," and "[s]tatements made by DeMasters to Doe solely within the confines of the EAP process cannot qualify as oppositional conduct."  (JA 90-91.)

Stated simply, these alleged statements to Doe were never intended for Carilion's "ears."  The statements to Doe were not purposively directed by DeMasters to his employer, and, as the District Court also confirmed:  "[t]here is no suggestion that DeMasters intended for Doe to pass his comments on to Carilion."  (JA 91-92.)  Thus, in his statements to Doe, "DeMasters did not communicate his views to Carilion in an effort to bring attention to the alleged discriminatory conduct." (JA 92.)  *See Pitrolo*, 2009 WL 1010634 at *3 (fact that employer learned of statements does not make statements oppositional if employee

21

did not intend comments to be communicated to the employer); *Harris-Rogers*,

2011 WL 4460574 at *7 (same, mistaken mass e-mail).

> ### 2. DeMasters Alleged Statements to Carilion Do Not <u>Qualify as Protected Oppositional Conduct.</u>

> #### (a) Simply Ferrying a Complaint through Proper <u>Channels is Not Oppositional.</u>

There are no allegations in this case that DeMasters played any active or

purposeful role in Doe's sexual harassment complaint.  All DeMasters did was

counsel Doe through the EAP and then "relay[] the substance of Doe's harassment

complaint" to Carilion's human resources department.  (JA 29 at ¶ 14.)  The

District Court confirmed that merely relaying a claim is not oppositional conduct

protected under 42 U.S.C. 2000e-3(a) – a proposition supported by abundant case

law:

> Merely ferrying Doe's allegations to Carilion's human
> relations department is in no sense oppositional, and
> DeMasters did not engage in protected activity in so
> doing.  *Rice v. Spinx Co., Inc.*, No. 6:10-01622-JMC,
> 2012 WL 684019 (D.S.C. Mar. 2, 2012) (acting within
> scope of employment by passing along a sexual
> harassment complaint to employer's human resources
> department is not protected activity); *see Claudio-Gotay
> v. Becton Dickinson Caribe, Ltd.*, 375 F.3d 99, 102 (1st
> Cir. 2004) ("To engage in protected activity, 'the
> employee must step outside his or her role of
> representing the company . . . .'" (quoting *McKenzie v.
> Renberg's Inc.*, 94 F.3d 1478, 1486 (10th Cir. 1996) . . .);
> *see also Hagan v. Echostar Satellite, LLC*, 529 F.3d 617,
> 628 (5th Cir. 2008) (agreeing . . . that "an employee must
> do something outside of his or her job role in order to

signal to the employer that he or she is engaging [in]
protected activity").  (JA 93.)

Moreover, while DeMasters and the *Amici* suggest that the scope of
DeMasters' EAP job is not yet fully defined, the First Amended Complaint leaves
no doubt that DeMasters' contacts with Carilion were in the context of his
performing job duties – not voicing oppositional activity regarding alleged sexual
discrimination perpetrated upon Doe.  (*See, e.g.,* JA 28 at ¶ 12-13) (alleging that
DeMasters' statements to Doe occurred during the course of his EAP counseling
session); (JA 30 at ¶ 20) (alleging DeMasters "offered [HR] the services of EAP
with respect to coaching the department director as to how [HR] might better
respond to Doe's complaints.")  DeMasters also cannot rely on the vagueness of
his ***own*** pleading to survive a motion to dismiss because it is the plaintiff's burden
in a discrimination case "to allege facts that support a claim for relief." *Bass*, 324
F.3d at 765.

Simply put, during the time the Alleged Harasser was employed, DeMasters
allegedly communicated to Carilion management on only *one* occasion: when he
allegedly "contacted Carilion's human resources department [on October 17,
2008] and *relayed the substance of Doe's harassment complaint*."  (JA 29 at ¶ 14)
(emphasis and brackets added).  Again, this lone communication simply cannot
support a retaliation claim because,  by merely "relaying" the allegation,
DeMasters did not express any oppositional views or beliefs to Carilion.  In other

23

words, he did "not voice his own opposition to any unlawful employment practice" under Title VII.  (JA 94.)  *See Moore*, 461 F.3d at 350; *Rice*, 2011 WL 7450630, at *3.  Similarly, in acting as an intermediary in passing on the allegation, he did not plausibly "step outside" his normal scope of activities to voice objection to a discriminatory practice prohibited under Title VII.  *See, e.g.*, *HBE Corp.*, 135 F.3d at 554; *Brush*, 466 F. App'x at 787; *McKenzie*, 94 F.3d at 1486.

> **(b)** **DeMasters' Purported Criticisms of the Post-Firing "Hostile Work Environment" was Not Oppositional Conduct Related to an Unlawful Employment Practice Under Title VII.**

> > **(1)** **The District Court Correctly Found Statements Made After the Alleged Harasser's Firing Were Non-Oppositional and Not Related to Unlawful Discrimination Prohibited Under Title VII.**

Following the first counseling session on October 17, 2008, and the relaying of Doe's claim to HR by DeMasters, the Alleged Harasser was terminated.  (*See* JA 29 at ¶ 16.)  This firing occurred before Doe ever spoke with DeMasters again. (*Id*.)  At that point Doe's sexual harassment problem was resolved.  There is no factual allegation anywhere in the First Amended Complaint that discrimination *based on sex or gender* persisted past this timeframe.  (*See generally*, JA 26-34.)

Indeed, there are no facts pled to show that DeMasters "stood in opposition" to, or exhibited "purposive conduct," with respect to Carilion's internal

investigation and handling of Doe's later alleged "hostile environment" concerns.

DeMasters' statements regarding Carilion's internal investigation did not relate to

Doe's allegations of sexual harassment under Title VII – and there is no allegation

that Carilion's handling of Doe's complaint was itself discriminatory.  DeMasters'

alleged critique of Carilion's investigation is both non-oppositional and

immaterial, as it dealt with purported hostility from friends of a fired individual

(*See* JA 29-30 at ¶¶ 17-18, 21) – not sex discrimination or a practice made

unlawful under Title VII.[9]

Indeed, oppositional conduct must relate to a practice made unlawful under

Title VII.  42 U.S.C. § 2000e-3(a).  Thus, complaining employees must have an

_____

[9] Any allegation that refers or relates to an "ongoing hostile work
environment" after the Alleged Harasser's employment ended similarly cannot
support a retaliation claim because there are no factual allegations to support the
existence of such a "Title VII claim." *Bass*, 324 F.3d at 765  ("The words 'hostile
work environment' are not talismanic, for they are but a legal conclusion; it is the
alleged facts supporting those words, construed liberally, which are the proper
focus at the motion to dismiss stage.")  Moreover, in the 12(b)(6) context, a court
should "not assume that [p]laintiff made complaints of . . . discrimination to his
employer on the basis of vague references in the Complaint" in order to state a
claim for retaliation under the opposition clause.  *Johnson*, 682 F. Supp. 2d at 578.
Bare allegations, "without corresponding supporting facts, are insufficient to give
fair notice to Defendant and to make Plaintiff's claim plausible on its face."  *Id*.
(internal citations omitted.)  Thus, for a plaintiff to plausibly plead that he
purposefully and intentionally brought concerns over purportedly discriminatory
activities to his employer's attention, he *must* "describe specific instances [of]
when he complained to his employer of . . . discrimination, [and at least] . . . stat[e]
when, how or to whom Plaintiff allegedly complained of . . . discrimination."  *Id*.

objectively reasonable belief that the conduct they are opposing is a violation of

Title VII – not a personality conflict or an internal investigation of hard feelings

between workers.  "Congress did not write the antiretaliation provision in Title VII

to protect employees who, with no more than good faith, complain about conduct

that no reasonable person would believe amounts to an unlawful employment

practice.")  *Jordan*, 458 F.3d at 341-42;[10] *see also Mann v. First Union Nat. Bank*,

185 F. App'x 242, 248, 2006 WL 1676397 (4th Cir. 2006).

Additionally, bare complaints about the manner in which an internal

investigation is conducted also cannot serve as the basis for protected activity.

*Entrekin v. City of Panama City Florida*, 376 F. App'x 987, 994, 2010 WL

1709755 (11th Cir. 2010) ("Title VII does not . . . establish requirements for an

employer's internal procedures for receiving sexual harassment complaints, or

even require that employers must have an internal procedure for receiving such

complaints; [t]hus because [plaintiff's] complaint involved the adequacy of the

[defendant's] internal procedure for receiving sexual harassment complaints, rather

than an employment practice that Title VII declares to be unlawful, [plaintiff's]

---

[10] In *Jordan* this Court ruled that "the mere fact that one's *coworker* has
revealed himself to be racist is not enough to support an objectively reasonable
conclusion that the *workplace* has likewise become racist." *Jordan*, 458 F.3d at
340-41 (emphasis in original).

conduct . . . did not constitute protected [activity]"); *see also Garnett v. Holder*,

2013 WL 453086, *5 (N.D. Ala. 2013).

The District Court, again, correctly identified the critical distinction between

actually speaking out against corporate violations of Title VII as opposed to

attempts to bootstrap unprotected claims into oppositional conduct as is the case

here:

> There is a fundamental difference, however, between
> voicing criticism of Carilion's investigation and handling
> of Doe's complaint, which DeMasters alleges, and
> championing Doe's substantive discrimination charges to
> Carilion's management, which is not alleged.
> DeMasters' criticisms of Carilion's investigative process
> is not oppositional activity subject to Title VII protection.

(JA 94.)  In this regard, the District Court placed significant weight on the

Eleventh Circuit's opinion in *Brush v. Sears Holding Corp.*, 466 F. App'x 781

(11th Cir. 2012), *cert. denied*, 133 S. Ct. 981 (2013).

The plaintiff in *Brush* was tasked with conducting an internal investigation

of alleged sexual harassment in the workplace.  Jane Doe, a Sears employee,

contacted Brush, complaining that she had been sexually assaulted by another

employee.  Brush relayed the allegations to company officials and Sears suspended

the alleged harasser.  Brush continued to meet with Jane Doe and eventually was

informed by Jane Doe that she had been raped by the suspended employee.  Jane

Doe requested privacy, however, and urged that neither her husband nor the police be informed of the alleged rape. *Id.* at 784.

Brush nonetheless pushed Sears to disclose the allegations to the police, but Sears declined, citing the investigation's incomplete status and Jane Doe's desire not to do so. Even after Sears fired the alleged rapist, Brush continued to lobby for the reporting of the alleged rape – and Brush was ultimately terminated. Brush subsequently filed a retaliation suit under Title VII. (*Id.*)

Although the plaintiff in *Brush* was far more involved and outspoken with corporate management than DeMasters claims to have been here, the Eleventh Circuit correctly concluded that Brush did not engage in any protected oppositional conduct, because "Brush's disagreement with the way in which Sears conducted its internal investigation into Mrs. Doe's allegations does not constitute protected activity. *As required by the explicit language of 42 U.S.C. § 2000e-3(a), to qualify as 'protected activity,' a plaintiff's opposition must be to a 'practice made unlawful by [Title VII.]'*" 466 F. App'x at 786 (emphasis added). (JA 95.)

The District Court here, similarly, concluded: "DeMasters' statements to Carilion that Carilion was mishandling Doe's complaints are not protected oppositional conduct. DeMasters' complaints about the manner in which Carilion handled Doe's investigation do not concern a practice made unlawful under Title

28

VII." (JA 95.) As a result, DeMasters' allegations do not state a claim for

retaliation under the opposition clause.[11]

> ### (2) Reviewing Each of the Alleged Comments Made After the Alleged Harasser's Firing Illustrates that these Statements are Not "Protected Activity".

After the Alleged Harasser's employment ended, DeMasters allegedly made

the following five statements to Carilion management:

1. On October 27, 2008, DeMasters allegedly called Carilion's HR department to "discuss the matter and [he] left a message with the representative" (JA 30 at ¶ 19);

2. On October 28, 2008, DeMasters allegedly spoke with HR Manager Baer and "offered Baer the services of EAP with respect to coaching the department director as to how human resources might better respond to Doe's complaint" (JA 30 at ¶ 20);

3. At some point, DeMasters allegedly told Baer that "he felt that Carilion was not handling the case properly" (JA 31 at ¶ 24);

4. On December 14, 2010, DeMasters allegedly spoke with Carilion managers and "acknowledged that Doe had been seen in the EAP but did not reveal any details from plaintiff's notes" (JA 31 at ¶ 25); and

5. On August 8, 2011, nearly three years after DeMasters last spoke with Doe and after Doe's claim against Carilion had been

---

[11] In his brief, DeMasters asks this Court to infer that Carilion must have interpreted DeMasters' conduct as being oppositional or participatory. As the District Court noted, however, "it is DeMasters' burden to allege that he engaged in protected activity in order to state a prima facie claim for retaliation under Title VII. This he has failed to do." (JA 95-96, n 5.)

resolved and dismissed by stipulation of the parties, Carilion allegedly asked DeMasters "if he told Doe that what happened to him at work was harassment," and DeMasters responded that "he did make such a statement" (JA 31-32 at ¶ 28; *see* JA 31 at ¶ 26.)

None of these statements qualify as protected activity. DeMasters' first alleged statement that he called Carilion to "discuss the matter and left a message with the representative" cannot constitute protected opposition because DeMasters does not allege the substance or content of his alleged message to Carilion. DeMasters' statement, therefore, cannot be viewed as a statement "in opposition" to any alleged discriminatory treatment of Doe. *See Johnson*, 682 F. Supp. 2d at 578 (a court should "not assume that [p]laintiff made complaints of . . . discrimination to his employer on the basis of vague references in the Complaint").

DeMasters' second alleged statement that he "offered Baer the services of EAP with respect to coaching the department director as to how human resources might better respond to Doe's complaint" also cannot support a retaliation claim. That is because DeMasters again does not allege that he stood in opposition to any alleged *discriminatory* treatment of Doe, and there is no allegation in the Amended Complaint that Carilion's handling of Doe's complaint was itself discriminatory. *See Brush*, 466 F. App'x at 786; *Entrekin,* 376 F. App'x at 994. If anything, this allegation confirms that this conduct is within the scope of DeMasters' (and the EAP department's) job duties, and DeMasters cannot rely on conduct that falls

within the scope of his duties to allege protected activities. *See, e.g., Rice*, 2011 WL 7450630, at *3; *Hill*, 2007 WL 2997556 *1.

Next, DeMasters' third alleged statement that "he felt that Carilion was not handling the case properly" cannot support a retaliation claim because it merely refers to Carilion's handling of its internal investigation. This does not constitute opposition to unlawful discrimination against Doe which is necessary for a retaliation claim to exist. *See Brush*, 466 F. App'x at 786 ("Quite simply, [plaintiff's] disagreement with the way in which [defendant] conducted its internal investigation into Mrs. Doe's allegations [of sexual harassment and rape] does not constitute protected activity"); *Entrekin,* 376 F. App'x at 994.

DeMasters' fourth alleged statement that he "acknowledged that Doe had been seen in the EAP" cannot support a claim for retaliation under the opposition clause because it, too, has no bearing on any alleged discriminatory treatment of Doe and does not allege any activity by Carilion that is prohibited by Title VII. In other words, this mere "acknowledgement" cannot be viewed as purposive opposition to any activity, let alone *discriminatory* activity.

Finally, DeMasters' last alleged statement to Carilion on August 8, 2011 confirming that in 2008 he "told Doe that what happened to him at work was harassment" likewise cannot support a claim for retaliation under the opposition clause because DeMasters was not "standing in opposition" to discrimination when

31

he made this statement to Carilion, and DeMasters "was not attempting to bring [Carilion's] attention to the alleged discriminatory [treatment of Doe]." *Pitrolo*, 2009 WL 1010634, at *3; *Laughlin*, 149 F.3d at 259. DeMasters could not, as a matter of law, have made this statement to Carilion with the purpose of bringing Carilion's attention to alleged discriminatory treatment of Doe because: (1) the alleged harassment of Doe occurred in October, 2008, more than two years and nine months prior to DeMasters' statement to Carilion, (*see* JA 28-29 at ¶¶ 12, 16); and (2) Doe's discrimination case against Carilion *had already been resolved* and dismissed by stipulation of the parties (and Doe's allegations were well known to Carilion). (*See* JA 22 at ¶ 26.) Thus, because DeMasters' statement was not purposefully directed to Carilion management in order to bring Carilion's attention to alleged discriminatory treatment of Doe, it is not protected under the opposition clause. *See, e.g., Pitrolo*, 2009 WL 1010634, at *3; *Laughlin*, 149 F.3d at 259; *Harris-Rogers,* 2011 WL 4460574, at *7.

Stated simply, the District Court correctly held that DeMasters did not communicate oppositional views to Carilion in an effort to bring Carilion's attention to alleged discriminatory conduct violative of Title VII. (JA 92.) "As in *Pitrolo*, this does not qualify as protected oppositional activity." (*Id.*)

C. **The District Court Correctly Applied** *Thompson* **And Rightly Held That DeMasters Does Not Fall Within the Zone of Interest For Third Party Claims Where DeMasters Was Not Terminated to Punish Doe, and He Did Not <u>Undertake Protected Activity</u>.**

1. <u>**This is Plainly Not a Zone of Interest Case**</u>.

The District Court correctly held that DeMasters, who "bore no relationship [with Doe] other than by virtue of their communications through the EAP two years earlier," does not fall within the "zone of interest" exception for third party claims set forth in *Thompson v. N. Am. Stainless, LP*, 131 S. Ct. 863, 870 (2011). (JA 96.) In addition, the District Court properly determined that *Thompson* applies only when adverse action is taken against a third party with a sufficiently close personal relationship to a person who *actually* engaged in protected activity *and* the adverse action against the third party is intended to punish the person who *actually* engaged in protected activity (rather than the third party). (*Id.*)

The literal language of the anti-retaliation provision of Title VII provides that an employer may not "discriminate against any of his employees. . . because *he* has opposed any practice . . . or because *he* has made a charge, testified, assisted or participated . . . ." *See* 42 U.S.C. § 2000e-3(a) (emphasis added). Prior to *Thompson*, numerous circuits held that the literal language of Title VII did not provide a cause of action for third parties to assert retaliation claims based on the protected activity of their spouse, family member, or significant other. These

33

courts imposed a *categorical rule* prohibiting third party claims even where the alleged retaliation was intended to punish the spouse or significant other who engaged in the protected activity.[12]

In *Thompson*, the plaintiff alleged that he was terminated because his fiancée had filed a charge with the EEOC and "injuring him was the employer's intended means of harming [his fiancée, the person who engaged in protected activity]." *Thompson*, 131 S. Ct. at 867 ("[W]e are also required to assume that NAS *fired Thompson* in order *to retaliate against Regalado* [his fiancée] for filing a charge of discrimination") (emphasis added). The Court found that Thompson fell within the zone of interest because "[h]urting him was the unlawful act by which the employer punished her." *Id.* That is, the retaliation *that formed the basis of his complaint* was directed against Thompson's fiancée, the one who engaged in protected activity under § 704(a).[13]

---

[12] *See, e.g., Smith v. Riceland Foods, Inc.,* 151 F.3d 813, 819 (8th Cir. 1998) ("This Court's decisions on retaliation claims have consistently held that, in order to establish a *prima facie* case of discrimination, the employee must have engaged in statutorily protected activity," and plaintiff cannot rely on the protected activity of his live-in girlfriend); *Fogleman v. Mercy Hosp., Inc*., 283 F.3d 561, 570 (3d Cir.), *cert. denied*, 537 U.S. 824 (2002); *Holt v. JTM Indus., Inc.*, 89 F.3d 1224, 1226 (5th Cir. 1996), *cert. denied*, 520 U.S. 1229 (1997); *Thompson v. N. Am. Stainless, LP*, 567 F.3d 804, 811 (6th Cir. 2009), *rev'd and remanded,* 131 S. Ct. 863 (2011).

[13] The *Thompson* Court understandably recognized the unique circumstances that exist in a small subset of third party cases where adverse action is directed to (cont'd. to next page . . .)

As the District Court clearly noted here, this case simply does not fall within the "zone of interest" exception: "Nothing of the sort happened in this case. There is no suggestion that DeMasters was terminated to punish Doe, as the two bore no relationship other than by virtue of their communications through the EAP two years earlier." (JA 96.) Moreover, Doe's lawsuit had already been resolved before DeMasters was even interviewed. (JA 22 at ¶ 26.) There was no conceivable *Thompson* "zone of interest" retribution against a loved one or close relation here. Indeed, the First Amended Complaint indicates Doe and DeMasters had initiated no contact since October 2008. DeMasters' efforts to forge a "zone of interest" claim are meritless.

### 2.    DeMasters' and the *Amicus'* Attempts to Expand *Thompson* are Unfounded.

Contrary to DeMasters' and the National Employment Lawyers Association's ("NELA") assertions, *Thompson* did not open the door *to all third*

---

(. . . cont'd. from previous page.)
someone with a very close personal relationship to the individual engaged in protected activity, such as a fiancé(e) or family member, because action against one is intended to hurt the other. *Id.*; *see N.L.R.B. v. Advertisers Mfg. Co.*, 823 F.2d 1086, 1088 (7th Cir. 1987) ("To retaliate against a man by hurting a member of his family is an ancient method of revenge, and is not unknown in the field of labor relations"); *Thompson*, 131 S. Ct. at 871 ("[The EEOC Compliance Manual] counsels that Title VII 'prohibit[s] retaliation against someone so closely related to or associated with the person exercising his or her statutory rights that it would discourage or prevent the person from pursuing those rights'") (Ginsburg, J. concurring).

*party claims*; rather, the exception only applies where there is a sufficiently close personal relationship and the *adverse action is intended to punish the person that engaged in the protected activity*. *Thompson*, 131 S. Ct. at 871. In fact, the defendant in *Thompson* argued that "prohibiting reprisals against third parties will lead to difficult line-drawing problems concerning the types of relationships entitled to protection." *Thompson*, 131 S. Ct. at 868. The Court "acknowledge[d] the force of this point," but stated that "we do not think it justifies a categorical rule [(such as the one applied by the Circuit Courts)] that third-party reprisals do not violate Title VII." *Id*. In so doing, the Court merely recognized that "firing a close family member will almost always" carry the intent to punish the family member that engaged in protected activity. *Id*.

*Thompson* absolutely does not, as DeMasters and NELA incorrectly argue, permit third party retaliation claims to be established by any co-worker who simply alleges that adverse action was taken against them. *See* NELA Br. at 21 (arguing that the (admittedly) broad adverse action standard in *Burlington N. & S.F.R. Co. v. White*, 548 U.S. 53, 68 (2006) is all that a plaintiff must prove to meet the zone of interest test and "borrow" the protected activity of another to meet the first element). This argument is not supported by *Thompson* and it is contradicted by the statutory language. Indeed, the statute only allows claims by persons discriminated against "because *he* has opposed . . ." or "because *he* has made a

charge . . . ."  The *Thompson* exception (as limited) is well founded because it allows claims where the adverse action is against a relative or person with a sufficiently close personal relationship to the actor engaged in protected activity such that the punishment is aimed at that actor.

DeMasters and NELA seek an unsupported extension of *Thompson* that is contrary to both the statute and the fundamental premise of *Thompson*.  Indeed, NELA expressly argues that "a plaintiff need not allege that the employer took the adverse employment action in order to punish the employee who engaged in the protected activity" in order to state a third party claim.  NELA Br. at 20.  But that is the essential, defining feature of *Thompson* and of third party claims, and the district court was correct to recognize this fact.[14]

As much as DeMasters would like to "borrow" Doe's protected activity to satisfy the first element of his retaliation claim, he cannot do so on the facts alleged because DeMasters does not and cannot allege that his termination was *intended to*

---

[14] DeMasters argues this point by relying on *E.E.O.C. v. Ohio Edison Co.*, 7 F.3d 541, 546 (6th Cir. 1993), a case that is inapposite to the issues *sub judice*. DeMasters Br. at 15-18.  As an initial matter, *Ohio Edison* was decided *before Thompson* and the Supreme Court's much later opinion clearly trumps *Ohio Edison*.  In any event, *Ohio Edison* involved actual oppositional activity by the representative of the victim of discrimination.  *See Gonzalez v. New York State Dep't of Corr. Servs. Fishkill Corr. Facility*, 122 F. Supp. 2d 335, 347 (N.D.N.Y. 2000).

*punish Doe*, as required for third party retaliation claims under *Thompson*.[15]

Additionally, DeMasters does not allege that he had any familial relationship with

Doe, and he does not allege that he had a sufficiently close personal relationship

with Doe such that adverse action against him would be intended to punish Doe for

Doe's protected conduct.  Thus, *Thompson*, has no bearing here because

DeMasters has failed to allege any facts that would place him within the "zone of

interest" of Doe.

## II.    DeMasters And the *Amici* Seek To Impermissibly Expand Retaliation Claims Beyond The Limits Embraced By The <u>Supreme Court, The Fourth Circuit And The EEOC.</u>

Long-standing and well-settled Title VII case law forecloses a retaliation

claim in DeMasters' case.  Confined by existing precedent, DeMasters and the

*Amici* openly advocate a dramatic expansion of the scope of retaliation claims.

The Supreme Court, however, has recently counseled against just such an

unbridled extension of coverage.

Title VII "is a detailed statutory scheme" that is "precise, complex, and

exhaustive."  *Nassar*, 133 S. Ct. at 2530.  This detail and precision "makes it

incorrect to infer that Congress meant anything other than what the text does say

---

[15] Indeed, the First Amended Complaint contradicts such a motive.  (*See* JA 31 at ¶ 26) (Doe's case was successfully resolved, prior to DeMasters' termination); (JA 32 at ¶ 33) (Carilion was looking to throw someone under the bus, not punish Doe).

on the subject of retaliation." *Id*. at 2530, 2532 (finding that, unlike status-based discrimination claims which can be proven by showing that an employer acted with mixed motives—unlawful discrimination being one—retaliation claims must be proven by a higher, but-for causation standard).

Additionally, proper interpretation and implementation of § 704(a) is of "central importance to the fair and responsible allocation of resources in the judicial and litigation systems" and particularly significant because "claims of retaliation are being made with ever-increasing frequency." *Id.* at 2531.[16] Consequently, expansive interpretation could "contribute to the filing of frivolous claims, which would siphon resources from efforts by employers, administrative agencies, and courts to combat workplace harassment." *See id.* at 2531-32. As *Nassar* counsels, this Court should not accept DeMasters' and the *Amici's* invitation to broadly expand the scope of retaliation claims.

---

[16] As the Supreme Court observed, in the years preceding *Nassar*:

> The number of [retaliation] claims filed with the [EEOC] has nearly doubled . . . from just over 16,000 in 1997 to over 31,000 in 2012. Indeed, the number of retaliation claims filed with the EEOC has now outstripped those for every type of status-based discrimination except race.

*Id.* (internal citations omitted, brackets added.)

A.    **DeMasters' and *Amici's* Attempt to Impermissibly Expand Participation Claims is Contrary to Precedent and the <u>Controlling Statutory Language</u>.**

1.    **The District Court Correctly Held (As Have All Circuit Courts That Have Considered The Issue) That Participation in an Internal Investigation Cannot <u>Give Rise to a Participation Claim Under § 704(a)</u>.**

As the District Court correctly recognized, it is well established that merely participating in an internal, company investigation prior to the filing of a formal EEOC charge cannot give rise to a participation claim. *See, e.g, Laughlin*, 149 F.3d 253 at 259.  Indeed, "[e]very Court of Appeals to have considered this issue squarely has held that participation in an internal employer investigation not connected with a formal EEOC proceeding does not qualify as protected activity under the participation clause."  *Townsend v. Benjamin Enterprises, Inc.*, 679 F.3d 41, 49 (2nd Cir. 2012) (internal citations omitted); *see also Entrekin v. City of Panama City Florida*, 376 F. App'x 987, 994, 2010 WL 1709755 (11th Cir. 2010); *Bourne v. Sch. Bd. Of Broward Cnty.*, 508 F. App'x 907, 911, 2013 WL 385420 (11th Cir.), *cert. denied*, 133 S. Ct. 2836 (2013); *Ellis v. Compass Grp. USA, Inc.*, 426 F. App'x 292, 297 (5th Cir. 2011); *Abbott v. Crown Motor Co.*, 348 F.3d 537, 543 (6th Cir. 2003); *Brower v. Runyon*, 178 F.3d 1002, 1006 (8th Cir. 1999); *Vasconcelos v. Meese*, 907 F.2d 111, 113 (9th Cir. 1990).

In the face of this overwhelming authority, DeMasters and *Amici* argue that internal investigations conducted prior to the filing of a formal EEOC charge

should be read into the limited, statutory language drafted by Congress.  *See* DeMasters Br. at 27-29; NELA Br. at 8-19; EEOC Br. at 22-28. These arguments simply flout existing law and seek an unwarranted sea-change in participation clause analysis.

> **(a)     The Statutory Language Does Not Embrace Internal Investigations Prior To The Filing Of An EEOC <u>Charge</u>.**

The participation clause, by its express terms, limits its protection to participation in proceedings "under this subchapter," meaning subchapter VI of Chapter 21 of Title 42.  42 U.S.C. §§ 2000e–2000e–17.  As the Second Circuit recognized in *Townsend*:  "Much of this subchapter is devoted to describing the enforcement powers of the EEOC and the procedures by which the EEOC carries out its investigations and hearings."  *Townsend*, 679 F.3d at 49 (citing, *e.g.*, 42 U.S.C. §§ 2000e–5, 2000e–8, 2000e–9).  "An 'investigation . . . under this subchapter' thus plainly refers to an investigation that 'occur[s] in conjunction with or after the filing of a formal charge with the EEOC; it does not include participating in an employer's internal, in-house investigation, conducted apart from a formal charge with the EEOC.'"  *Id.* (quoting *E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000)); *see Silver v. KCA, Inc.*, 586 F.2d 138, 141 (9th Cir. 1978) (recognizing that participation means "participation in the machinery set up by Title VII to enforce its provisions").

Indeed, "Title VII does not . . . [even] establish requirements for an employer's internal procedures for receiving sexual harassment complaints, or even require that employers must have an internal procedure for receiving such complaints." *Entrekin*, 376 F. App'x at 994. Title VII does, however, establish requirements for the EEOC to investigate after the filing of a charge. *See, e.g.,* 42 U.S.C. § 2000e-5(b) ("Whenever a charge is filed . . . the Commission . . . shall make an investigation thereof . . . .").

As written, the filing of an EEOC charge provides a critical dividing line between participation claims and the more tightly circumscribed opposition claims. Removal of this dividing line would not only frustrate Congressional intent, it would have serious practical consequences. For example, because "[t]here is no good faith or reasonableness requirement for participation clause conduct," *Mezu v. Morgan State Univ.*, 2013 WL 3934013, *10 (D. Md. 2013), under DeMasters' theory employees could complain about irrelevant conduct in internal proceedings and receive broad "participation protection," despite lacking any objectively reasonable or good faith belief that their complaint relates to a practice made unlawful under Title VII.

DeMasters' and *Amici's* strained and expansive reading of participation claims would render opposition claims superfluous, again, contrary to the statutory language. *See Total Sys. Servs. Inc.*, 221 F.3d at 1174, n.3.

42

**(b)** **The Judicially Crafted Standard for Vicarious Employer Liability Did Not And Cannot Rewrite Congress's Statutory Text Limiting Participation Claims.**

By misreading two Supreme Court decisions, *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), Appellant and *Amici* ask this Court to expand "participation" far beyond its statutory limits.  Contrary to their arguments, *Faragher* and *Ellerth*'s holdings regarding vicarious liability for supervisor harassment cannot be used to rewrite the statutory text of Title VII drafted by Congress.  Various courts have previously rejected this very argument when made by the EEOC and others.  *See, e.g., Townsend*, 679 F.3d at 50 ("*Faragher* and *Ellerth* do not provide a basis for bringing internal investigations not associated with a formal EEOC charge 'under this subchapter' within the language of the participation clause."); *Total Sys. Servs., Inc.*, 221 F.3d at 1174, n.3 (same).

In *Total Systems*, for instance, the Eleventh Circuit rejected the EEOC's argument stating:

> The EEOC asserts that—in the light of the Supreme Court's recent decisions in [*Faragher* and *Ellerth*]—the participation clause must encompass taking part in an employer's internal investigation, apart from the filing of an EEOC complaint . . . . We disagree with the EEOC's use of these important decisions. These decisions decided the proper level of vicarious liability that employers have for the acts of supervisors. We do not believe Congress intended to protect absolutely every sexual harassment complaint made to an employer—no matter how

43

informal or knowingly false—as a protected activity under the participation clause. ***The statute's opposition clause would be rendered largely meaningless, having been engulfed by the participation clause***.

*Total Sys. Servs., Inc.*, 221 F.3d at 1174, n.3 (emphasis and brackets added) (internal citations omitted).  Similarly, in *Townsend*, the Second Circuit rejected the argument when raised by the EEOC in its amicus brief.  *Townsend*, 679 F.3d at 50, n.10 ("The EEOC has submitted an amicus brief urging us to adopt a contrary interpretation of the participation clause, one that embraces internal employer investigations. The EEOC's views are entitled to deference to the extent they have the power to persuade . . . .  However . . . we do not find the EEOC's interpretation persuasive in this case.") (internal citation omitted); *cf. Brush*, 466 F. App'x at 787. ("Brush would have us extend [the Supreme Court's reasoning in *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 277-78 (2009)] not just to those directly impacted by workplace discrimination but to all individuals involved in the investigation of that discrimination, no matter how far distant.")

The statutory language simply does not support DeMasters' or the *Amici's* attempt to expand the participation clause to employer's internal investigations.

> **B.    DeMasters' And *Amici's* Attempt to Impermissibly Expand Opposition Claims is Contrary to Precedent and the Very Concept of Providing Meaningful Opposition to Conduct <u>Violative to Title VII</u>.**

1.    **DeMasters' Attempts to Expand the Definition of "Opposition" to Capture** *Subjective, Unexpressed* **Opinion are Meritless.**

As noted, *supra*, existing case law under the opposition clause is straight-forward.  To allege protected activity under the opposition clause, employees must "communicate their [oppositional] views to their employers through purposive conduct."  *Pitrolo,* 2009 WL 1010634, *3, n.6 (citing *Crawford*); *accord* EEOC Compl. Man. § 8-II(B)(1)-(2), 2006 WL 4672793 (June 1, 2006) ("A complaint about an employment practice constitutes protected opposition *only if* the individual explicitly or implicitly *communicates a belief* that the practice constitutes unlawful employment discrimination" . . .  "*to his or her employer*.") (emphasis added).[17]

The term "oppose" is not defined in Title VII and therefore, "carries its ordinary meaning, 'to resist or antagonize ...; to contend against; to confront; resist; withstand.'"  *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 129 S. Ct. 846, 850 (2009) (quoting Webster's New International Dictionary 1710 (2d ed.1958).  Under this plain meaning, communicating or voicing "opposition"

---

[17] *Cf. McNair*, 1999 WL 30959 at *5 ("[T]he 'opposition clause,' by its very terms, requires that the employee at least have *actually opposed* employment practices made unlawful by Title VII. That is to say, the clause protects opposition neither to all unlawful employment practices nor to practices the employee simply thinks are somehow unfair.") (emphasis added); *Bonds*, 629 F.3d at 384 ("Title VII is not a general bad acts statute"); *Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 264 (4th Cir. 2008) (Title VII is not a general whistleblower statute).

45

Appeal: 13-2278     Doc: 26     Filed: 03/20/2014     Pg: 63 of 77

requires more than unexpressed opinions or subjective thoughts as DeMasters suggests.

The authorities cited by DeMasters, purportedly supporting a broad definition of "opposition," do not support a finding of protected activity in DeMasters' case, where oppositional views were *never* expressed to Carilion for the purpose of addressing discrimination. Indeed, in *Collazo v. Bristol-Myers Squibb Mfg.*, 617 F.3d 39, 46 (1st Cir. 2010), the plaintiff expressed *actual* oppositional views to the employer because he, unlike DeMasters, engaged in "*persistent efforts*" to help the claimant initiate her complaint of sexual harassment by eliciting an apology from the alleged harasser, telling the company's human resources officer that this was a "serious case," and setting up and attending numerous meetings with the claimant and HR to address the alleged discrimination. *Collazo*, 617 F.3d at 47.

DeMasters meeting with co-workers, by contrast, related only to an unsupported "hostile environment" issue that was *never* brought to Carilion's attention. (*See* JA 29 at ¶ 18.)[18] DeMasters' alleged statements to Carilion relate only to: (1) relaying Doe's allegations without any accompanying *communication*

---

[18] DeMasters alleges that he had a conversation with "colleagues in EAP" on October 27, 2008 to discuss how to address the "ongoing hostile work environment," and a decision was made that DeMasters would "offer insight into how Carilion might intervene," but he fails to allege that he ever offered "insights"—whatever those might have been—to Carilion. (See JA 29 at ¶ 18.)

46

of DeMasters' oppositional opinion or belief, (*see* JA 29 at ¶ 14); and (2) an

internal investigation that is not alleged to have been conducted in a discriminatory

manner or to have involved practices violative of Title VII.  (*See* JA 31 at ¶ 24.)

Other cases relied upon by DeMasters in this regard also offer him no

support.  While the court in *Fisher v. Town of Orange*, 885 F. Supp. 2d 468, 478

(D. Mass 2012) cited *Collazo* for the proposition that tacit conduct may, in some

instances, be sufficient for protected opposition, this was a mischaracterization of

the actual standard applied in *Collazo* where plaintiff clearly expressed

oppositional views to the employer.  *Fisher*, 885 F.Supp.2d at 478-79.  Moreover,

the Court in *Fisher* did not find protected opposition.  *Id.*

Undeterred, DeMasters reiterates his "passive opposition" argument through

reliance on *McDonnell v. Cisneros*, 84 F.3d 256 (7th Cir. 1996).  (*See* DeMasters'

Br. at 18-20.)  As the District Court explained, DeMasters' reliance on *McDonnell*

is misplaced because:

> Unlike in *McDonnell*, [where plaintiff was asked, but refused to
> have his subordinate withdraw her formal complaint of sexual
> harassment] . . . DeMasters was not Doe's superior and had no
> ability to control Doe's actions. As such, the concern identified
> by the court in *McDonnell*— i.e., "that employers could obtain
> immunity from the retaliation statute by directing their
> subordinates to take steps to prevent other workers (as by threat
> of dismissal or other discipline) from complaining about
> discrimination," *id.* at 262— is simply not present in this
> case.").

47

(JA 97.)[19]

Accordingly, this Court should reject DeMasters' invitation to expand the definition of "opposition" to include subjective, unexpressed opinion.

> **2.    The Definition of Opposition Applied in *Crawford*, *Pitrolo* and by the District Court Below Supports the <u>Policy Underlying § 704(a)</u>.**

DeMasters essentially seeks to write the well-established "purposive opposition" standard out of existence.  Requiring purposive communication to an employer of an employee's oppositional views or beliefs (in order to bring the employer's attention to alleged discrimination) is essential because it supports the carefully crafted distinction between the terms "oppose" and "participate" in Title VII.[20]

---

[19] In any event, *McDonnell*'s holding was admittedly premised on an extension of the literal language of Title VII's retaliation provision.  *McDonnell*, 84 F.3d at 262 (recognizing that the "claim does not come within the scope of the retaliation provision of Title VII if interpreted literally.") The Supreme Court, however, recently instructed that it is "incorrect to infer that Congress meant anything other than what the text does say on the subject of retaliation." *Nassar,* 133 S.Ct. at 2530. Even if *McDonnell* is good law following *Nassar*, *McDonnell* is still inapposite for the reasons outlined by the District Court, and its holding has no impact on DeMasters' failure to plead a retaliation claim.

[20] As with the term "oppose," the term "participate" is not defined in Title VII and therefore, carries its ordinary meaning: "to take or have a part or share, *as with others*."  The Random House Dictionary of the English Language 1414 (2nd Ed. 1987) (emphasis added); *see also* Webster's New Twentieth Century Dictionary 1306 (2nd Ed. 1966) (defining participate to mean "to have or take a part or share with others").

There can be no doubt that Congress was well aware of the distinction between the terms "oppose" and "participate" when defining "other unlawful conduct" in § 704(a) because Congress carefully crafted separate and distinct claims and standards for plaintiffs to meet if they oppose practices made unlawful by Title VII, or instead, merely participate or assist in any manner in an investigation, proceeding, or hearing under Title VII. *See, e.g.,* 42 U.S.C. § 2000e-3(a); *Nassar*, 133 S. Ct. at 2530; *Laughlin*, 149 F.3d at 259, n.4 ("The distinction between participation clause protection and opposition clause protection is significant because the scope of protection is different . . . .  [T]he scope of protection for activity falling under the participation clause is broader than for activity falling under the opposition clause") (internal citations omitted).

Moreover, the standard requiring purposive communication to an employer of an employee's oppositional views or beliefs (in order to bring the employer's attention to alleged discrimination) supports the policy underlying the opposition clause by encouraging employees to stand in opposition to discrimination (either explicitly or implicitly) and thereby to stress to the employer the gravity of the allegations and the seriousness with which they must be received.  *See Faragher*, 524 U.S. at 806 (Title VII's primary purpose "is not to provide redress but to avoid harm") (internal citation omitted).

49

Objectively passing information to an employer without expressing oppositional views does little to reinforce the need for allegations to be addressed. This is perhaps uniquely true when the person conveying the information is not the alleged victim of discrimination because a complaint from an alleged victim will almost always carry with it a corresponding expression of the gravity and seriousness of the alleged victim's concerns. *See Crawford*, 555 U.S. at 276 ("[A victim's] ostensibly disapproving account of sexually obnoxious behavior toward her by a fellow employee . . . would certainly qualify in the minds of reasonable jurors as 'resist[ant]' or 'antagoni[stic]'").

If, however, third parties were to receive opposition protection by merely passing information along, intermediaries would be encouraged to convey, but down-play the allegations (or validity or accuracy thereof) to minimize the attention to the reporting employee. Such a policy frustrates the purpose of the opposition clause and instead, rewards vague or watered-down transmission of allegations. If an injustice is occurring, employees must be encouraged to firmly (and at least unequivocally) state that fact – not to whisper it in passing.

Any contrary standard that does not require purposive communication of an employee's oppositional views or beliefs to the employer would have serious practical implications: "It would open the door to retaliation claims by employees who never expressed a word of opposition to their employers." *Crawford*, 555

U.S. at 282 (Alito, J., concurring).  The expansion DeMasters advocates is not what Congress intended – and certainly not what the plain meaning of the statutory language calls for.

> **3.    The Job Duties Limitation On Opposition Claims is a Well-Established and Sensible Limitation on Opposition Claims.**

DeMasters and the EEOC also attempt to expand opposition claims by arguing against imposition of the job duties or "manager rule" limitation on opposition claims.  *See, e.g.,* DeMasters Br. at 21-23; EEOC Br. at 18-22.  Yet the cases relied upon by DeMasters and the EEOC to support their argument are inapposite and unpersuasive.

As noted, *supra*, it is well-established that conduct within the scope of an employee's job duties cannot serve as the basis for protected opposition because the mere act of performing required duties *does nothing to convey either support or opposition* to any given policy or practice to the employer; it is simply neutral conduct in the performance of one's duties.   Although this rule initially developed under Fair Labor Standards Act ("FLSA") jurisprudence, this is not, as DeMasters and the EEOC argue, a reasoned basis for ignoring the applicability of its logic in Title VII cases.  *See* DeMasters Br. at 21; EEOC Br. at 20-21.   Indeed, the job duties limitation has been routinely applied in Title VII cases. *See, e.g., Rice*, 2012 WL 684019, at *5; *Hill*, 2007 WL 2997556, at *1; *Brush*, 466 F. App'x at 787;

*Callazo*, 617 F.3d at 49; *HBE Corp.*, 135 F.3d at 554; *see Weeks v. Kansas*, 503 F. App'x 640, 642 (10th Cir. 2012).   Application of this rule in the Title VII context is undoubtedly proper because "the purpose of [the two statutes'] retaliation provisions is one and the same." *Darveau v. Detecon, Inc.*, 515 F.3d 334, 342 (4th Cir.2008); *see also, Evans v. D.E. Foxx & Assoc.*, Inc., 2013 WL 3867598, at *14, n.21 ("Though *Robinson* [*v. Wal–Mart Stores, Inc.*, 341 F.Supp. 759, 763 (W.D.Mich.2004)] and *McKenzie* deal with FLSA claims, their logic applies to plaintiff's [Title VII] retaliation claims").

DeMasters is likewise incorrect that *Crawford* somehow superseded the job duties rule.  *See* DeMasters Br. at 22.  Indeed, in *Brush*, the Eleventh Circuit succinctly disposed of this argument:

> While Brush argues that *Crawford* has foreclosed the "manager rule," we cannot agree. *Crawford* pertained only to whether the reporting of a harassment claim was covered by Title VII where the reporting was solicited rather than volunteered.  It did not address whether a disinterested party to a harassment claim could use that harassment claim as its own basis for a Title VII action.  Accordingly, we find the "manager rule" persuasive and a viable prohibition against certain individuals recovering under Title VII.

*Brush*, 466 F. App'x at, 787 (internal citation and footnote omitted).

### 4. There is No "Inexplicable Gap" Between Opposition and Participation Claims.

Contrary to DeMasters' and the *Amici's* arguments (NELA at 15-19), there is no "inexplicable gap in coverage" here – to the contrary, there is an intentional Congressional distinction between acts of "participation" and acts of "opposition." *See, e.g., Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1313 (6th Cir. 1989) ("[A]ny activity by the employee prior to the instigation of statutory proceedings is to be considered pursuant to the opposition clause.")  In other words, *the issue is not that the statutory language offers insufficient protection; it is that DeMasters failed do enough to avail himself of that protection*.

Here, DeMasters merely "relayed the substance of Doe's complaint" and certainly did not purposively complain about practices that are unlawful under Title VII.  His failure to engage in protected activity, however, does not create an "inexplicable gap in Title VII's protection," as alleged by the EEOC.  EEOC Br. at 11.  It merely reflects Congress's intent to require more of employees that wish to avail themselves of protection under the opposition clause.

5.    The *Burlington* and *Robinson* Holdings Are
      Irrelevant Here.

      (a)    *Burlington* Relates Only To The Second
             Element of a Retaliation Claim (Adverse
             Action) Which Is Not Disputed Here; It Does
             Not, As *Amici* Try To Suggest, Supplant The
             First Element (Protected Activity).

The crux of this appeal is whether DeMasters can meet the first element of

his retaliation claim – *e.g.* whether he engaged in protected activity by

participating in Title VII statutory process or through purposeful opposition.  The

second element, adverse action, is not in dispute because DeMasters was

terminated, and termination is, without question, an adverse action.  Nonetheless,

DeMasters and *Amici* erroneously cite *Burlington N. & S.F.R. Co. v. White*, 548

U.S. 53, 68 (2006), a case dealing exclusively with the test for adverse action, in an

effort to support their arguments that DeMasters can overcome his failure to

plausibly plead the first element, protected activity.  *See* DeMasters Br. at 10;

NELA Br. at 22-24; EEOC Br. at 11.  He cannot, and *Burlington* is simply

irrelevant to the issues at bar.

In *Burlington*, the Supreme Court was asked to test the limits of the second

element of a retaliation claim, adverse action.  *Burlington*, 548 U.S. at 68

(recognizing that "[t]he antiretaliation provision protects an individual not from all

retaliation, but from retaliation that produces an injury or harm").  The "injury" at

issue in *Burlington* was whether an employee's reassignment of her job duties or

54

her unpaid suspension which was later rescinded with backpay, rose to the level of adverse action. *Id.* at 70. Protected activity, however, was not at issue because the employee had previously filed three EEOC charges, two of which alleged that her reassignment and suspension were discriminatory. *Id*. at 58. In addressing only the adverse action element, the Supreme Court concluded: "In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (internal citations and quotation marks omitted).

Whether a reasonable worker would have been dissuaded "from making or supporting a charge of discrimination," is a test that is simply irrelevant here because adverse action is not in dispute. *See, e.g., Lettieri v. Equant Inc.*, 478 F.3d 640, 650 n.2 (4th Cir. 2007) ("*Burlington Northern* does not affect our analysis because the second element is not an issue in this appeal."); *see also Grubic v. City of Waco,* 262 F. App'x 665, 667 (5th Cir. 2008) ("*Burlington Northern* clarified the standard that applies to the second element . . . : an 'adverse employment action.'")

Nonetheless, DeMasters and the *Amici* cite *Burlington*'s holding out of context to imply that it has some bearing on DeMasters' claim—it does not. *See, e.g.*, DeMasters Br. at 10; NELA 22-24; EEOC Br. at 11. Indeed, NELA ignores the issue of protected activity, NELA Br. at 20-24, and simply states: "The

55

question is whether terminating DeMasters 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" NELA Br. at 22 (quoting *Burlington*).  This is not the question at all—adverse action is not in dispute.  The question is whether DeMasters plausibly alleged that he was terminated because he *engaged in protected activity* (which led to the subsequent adverse action) – and he did not.

### (b)    *Robinson* Is Likewise Irrelevant To An Analysis Of Protected Activity.

The Supreme Court's decision in *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997) is likewise irrelevant to the analysis of whether DeMasters can overcome his failure to plausibly allege protected activity.  In *Robinson,* the Supreme Court was asked to determine whether a former employee, who was terminated *for engaging in protected activity*, fell within the definition of "employee" as used in Section 704(a) – thus, permitting him to sue.   *Robinson*, 519 U.S. at 338, 344.  After recognizing that the term "employees" in § 704(a) is ambiguous (because, among other things, § 704(a) does not explicitly state whether it refers to only current, or to both current and former employees) the Court found that "employee," as used in § 704(a) includes former employees.  *Robinson*, 519 U.S. at 345.  In reaching its conclusion, the Court found that excluding claims by former employees who engage in protected activity would be inconsistent with a primary

purpose of antiretaliation provisions: maintaining unfettered access to statutory remedial mechanisms.  (*Id*.)  (citing NLRA and FLSA antiretaliation cases).

Again, protected activity (the issue here) was not in dispute in *Robinson* because the former employee had filed an EEOC charge alleging a racially discriminatory discharge.  *Id*. at 338.  The only question was whether a former employee, who engaged in protected activity, was precluded from filing suit by virtue of his status as a former employee.  *Robinson*, 519 U.S. at 338, 344.

The EEOC apparently argues that *Robinson* (and *Burlington*) are relevant here:  "Because of the importance of 'unfettered access' to Title VII's remedial mechanisms, [citing *Robinson*], the Supreme Court construed the scope of the statute's protections broadly by prohibiting any adverse actions likely to deter employees' exercise of their rights [citing *Burlington*]."  EEOC Br. at 11.  NELA likewise argues that the "unfettered access" principal is somehow relevant.  NELA Br. at 6.  They are wrong.

Quite simply, the "unfettered access" principal in *Robinson*, like the adverse action test in *Burlington* is of no assistance to DeMasters because he failed to plausibly allege *protected activity*.  Indeed, it is axiomatic that access to remedies is only available to those who satisfy the essential elements of a claim, and *Burlington* and *Robinson* do not change that analysis.  In short, the precepts set

forth in *Burlington* and *Robinson* cannot save DeMasters from his failure to

plausibly plead protected activity.

## CONCLUSION

For the foregoing reasons, the thorough and well-reasoned ruling by the

District Court should be affirmed.

## ORAL ARGUMENT STATEMENT

Appellees do not believe oral argument is necessary in this case.  We will be

happy to participate in oral argument if the Court so desires.

Respectfully submitted,

CARILION CLINIC;
CARILION MEDICAL CENTER;
CARILION BEHAVIORAL HEALTH, INC.


By:____/s/ Frank K. Friedman_____
              Of Counsel

Agnis C. Chakravorty (VSB #30225)
achakrav@woodsrogers.com
Frank K. Friedman (VSB #25079)
friedman@woodsrogers.com
Joshua R. Treece (VSB #79149)
jtreece@woodsrogers.com
WOODS ROGERS PLC
Wells Fargo Tower
10 South Jefferson Street, Suite 1400
P. O. Box 14125
Roanoke, Virginia  24038-4125
Telephone:  540-983-7600
Fax:  540-983-7711
          *Counsel for Appellees*

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1. This brief complies with the Type-volume limitation of Fed. R. App. 32(a)(7)(B) because:

   The word count of this brief is <u>13,864 words</u>.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   This brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word, Times New Roman, 14 point</u>.

March 20, 2014

　　　　<u>/s/  Frank K. Friedman</u>
Counsel for Appellant

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 20th day of March, 2014, I caused this Response

Brief of Appellees to be filed electronically with the Clerk of the Court using the

CM/ECF System, which will send notice of such filing to the following registered

CM/ECF users:

Terry N. Grimes
Grimes & Williams, PC
320 Elm Street
Roanoke, VA  24016-4001
tgrimes@terryngrimes.com
*Counsel for Appellant*

Susan L.P. Starr
U.S. Equal Employment Opportunity
Commission
Office of General Counsel
131 M Street, N.E., 5th Floor
Washington, DC 20507
susan.starr@eeoc.gov
*Counsel for EEOC*
*Amicus Supporting Appellant*

Michael L. Foreman
Pennsylvania State University
Dickinson School of Law
329 Innovation Blvd., Suite 118
State College, PA 16803
mlf25@psu.edu
*Counsel for National Employment*
*Lawyers Association*
*Amicus Supporting Appellant*

I further certify that on this 20th day of March, 2014, I caused the required

copies of the Response Brief of Appellees to be hand filed with the Clerk of the

Court.

/s/ Frank K. Friedman
Counsel for Appellant

60